WILLIAM L. CHAPMAN *v.* G. W. WACASER.

•' Ten days after peace is made between the United States and the Confederate States," used in a bond, to specify the time at which the money is payable, means *ten days after peace,* and does not render the ratification of a treaty of peace between the powers mentioned, a condition precedent to the payment.

(Rodman, J., *dissenting.*)

Where a note payable as above, called for payment "in current money at that time," *the scale* is expressly excluded.

( *Sowers* v. *Earnhart, ante* 96, approved.)

COVENANT upon a bond for money, tried before *Logan*,. *J.*, at Spring Term 1870, of LINCOLN Court.

CHAPMAN *v.* WACASER.

No statement is required.

Under the instructions of his Honor, there was a verdict for the plaintiff, for the full amount of the bond.

Judgment accordingly; and Appeal by the defendant.

*Hoke*, for the appellant.
*Bragg, contra.*

SETTLE, J. This was an action of Covenant, upon the following instrument: "July, 1864. Ten days after peace is made between the United States, and the Confederate States of America, we, G. W. Wacaser and Wm. Parham, promise to pay Ambrose Cline the sum of one thousand dollars, without interest, in current money at that time, for value received. Witness our hands and seals.

G. W. WACASER, [Seal.]
WM. PARHAM, [Seal.]"

Mr. Hoke submitted a very ingenious argument to establish the position that the words "Ten days after peace is made between the United States and the Confederate States of America," amount to a condition precedent, and that there must be a ratification of a treaty of peace between two contracting powers, and not a mere suppression of a rebellion by force, before the defendants can be called upon to perform their covenant. We were at first inclined to adopt this view, but upon consideration we are satisfied that the words relied upon to establish this construction, amount to nothing more than if the covenant had read "ten days after peace is made," or "ten days after the war." Confederate Treasury notes were worded, "Six months after a ratification of a treaty of peace between the Confederate States and the United States of America," &c., expressly for the purpose of making their payment depend

upon success, and thereby aiding the Confederacy, by adding another strong motive for success with the people who held her securities.

Here we are satisfied that no such motive actuated the contracting parties. They merely wished to fix a time of payment, and a currency; and it was agreed between them that whether the time should be long or short, no interest should accrue.

If then we read the covenant "ten days after peace is made," or "ten days after the war," we are relieved of all further difficulty, for the legislation which raises the presumption that certain contracts made during the war, are solvable in Confederate money, does not apply to this contract, since here the parties, by plain and unequivocal terms, have expressed on the face of the covenant, that it is not to be solvable in Confederate money, but in "current money," ten days after peace is made.

The principle governing this case is laid down in *Sowers* v. *Earnhart, ante* 96; there, however, the presumption that the contract was solvable in Confederate money, was rebutted by evidence; here, no such presumption can arise against the express provisions of such contract.

RODMAN, J. (*dissenting*.) I cannot concur in the opinion of the majority of the Court in this case, because I cannot bring myself to believe that the parties, in using the words "ten days after peace is made between the United States and the Confederate States," intended nothing more than "when the war is over." To put this construction upon them requires us to violate a well settled principle in the construction of contracts, viz: that every word must have its proper meaning and force, provided it can be done without destroying sense. Here, in the terms "peace is made," &c., we must give effect to the word "made." Peace is

usually *made* between hostile parties, by a treaty between them. It may *occur*, through a mutual cessation of hostilities, or through the destruction of one of them. But if in a fight between two men, one should kill the other, we should hardly say that "peace was made," much less, that it was *made between the contending parties.* If in such a case, the slayer, in giving an account of the affair, should say, "I made peace with my antagonist;" would that convey to a mind previously uninformed an accurate statement of the result? But here, peace is to be made between two parties; and that implies the concurrence of both in making the peace, and the continued existence of both, after, or at least, during, the making.

No act of Congress, no proclamation of the President of the United States, or of any official, or any decision of a Court, has yet said that peace has been made between the United States and the Confederate States; their language has always been, the rebellion is ended, or some equivalent expression, carefully excluding any participation of the Confederate States, as such, in the result.

I think the parties intended substantially a bet on the war; the lender bet that the Confederate States would succeed in establishing their independence, in which case he would get back his then deposited Confederate money, in what would be at least a legal tender; and the borrower thought the Confederate States would fail, in which case he would escape payment. At the date of this contract in July, 1864, Confederate money was, according to the legislative scale, 21 to 1; the $1,000 lent was therefore worth in gold at that time $47.60. Peace, if construed to mean a mere end of fighting, was certain, at some time, and probably no man living in America supposed the war would last ten years. Supposing money at compound interest at six per cent. to double in twelve years, it would be more than

fifty years before the sum borrowed, could, on those terms, equal the sum agreed to be paid. The stipulation for so large a profit proves that the lender supposed he was taking a great risk; yet, according to the construction given to the contract, there was no risk except of a delay which could not in the nature of things be for many years. The case of *Boulware* v. *Newton,* 18 Grattan, was a bet somewhat like this, but not sufficiently like to be a guide.

PER CURIAM. Judgment affirmed.