WILLIAM HOWARD and wife *v.* FRANKLIN BEATTY.

A bond dated April 3, 1865, payable at twelve months, "in current money," is presumed to be subject to the *scale* laws.

In a case where land had been sold by an executor during 1864, no money having been paid by the purchaser, and subsequently the executor repurchased the land and agreed to pay the purchaser's debt on account of it; and thereupon, a year after the purchase (in April 1865) he agreed with one of the heirs to pay her one-half of her share in Confederate money, and to give a note payable as above for the other half; *Held*, that this note was not liable to be *scaled* by proving the value of the land:

*Also,* that there was evidence to warrant a jury that it was not to be *scaled* at all, but that the Court erred in deciding *itself* that such note was not to be scaled.

Although, in some cases, a jury may correct a miscarriage on the part of the Court, by finding a proper verdict; yet, in no case will a suggestion that the Court has found a fact truly, atone for such an invasion by it of the province of the jury.

CIVIL ACTION, tried before *Mitchell, J.,* at Spring Term 1870 of CATAWBA Court.

The plaintiffs complained on account of the non-payment of a bond executed by the defendant to the *feme* plaintiff, payable at twelve months, "in current money," and dated April 3d 1865; upon this was endorsed, "credit by one note of Freeman Howard for two hundred and two dollars and twenty-five cents, to be paid in gold or silver or its value in currency dated January 1st 1866, this 12th March 1869."

It appeared that the defendant, as executor of one Millegan, in February 1864, had sold certain lands to Elisha Sherrill; of the purchase money, one thousand and twenty-six dollars was due to the feme plaintiff as one of Millegan's heirs. The land was to be paid for in "current money" at twelve months, but no note was given for the price. The

---

HOWARD and wife *v*. BEATTY.

---

defendant afterwards bought this land from Sherrill, and took his place as debtor to the heirs.

In April 1865, the defendant offered to pay Mrs. Howard her share, in Confederate money. This she declined to take. He then offered to give her a note, as above, for one-half, if she would take the other half in Confederate money: telling her that in his opinion, "the money would be good in twelve months, and would be a fair price for her land:" or, as another witness said, "the money would then be better, because, if it did not get better, the war would end." This proposition was agreed to, and was executed.

Thereupon his Honor refused to allow evidence to be introduced of the value of the land for which the note was given; and the defendant excepted.

He instructed the jury that they should find a verdict for the face of the note in United States Treasury Notes, subject to the gold value and premium of the note endorsed as a credit, &c.

Verdict, and Judgment accordingly; and the defendant appealed.

*Bynum*, for the appellant.
*Moore*, contra.

SETTLE, J. The bond upon which this action was brought, was executed on the third day of April 1865, *flagrante bello*, and is, therefore, embraced by the legislation which declares, that the presumption shall be that money contracts of that date are solvable in Confederate money. But it is contended that no such presumption can arise in this case, because the parties fixed, in the bond, the currency in which it was to be discharged, to-wit: " current money."

Suppose the promise had been, to pay five hundred and thirteen dollars *in currency*, leaving out the word money.

We think that it would clearly have come within the spirit of those remedial enactments. If it had been, to pay five hundred and thirteen dollars *in money*, then it would have fallen within both the letter and spirit. How can the coupling of the two words make a difference ? But it is said that the presumption, that a bond given on the third of April 1865, is solvable in Confederate currency, when in point of fact there was no currency, is a violent one. That may be so, but *ita lex scripta est*, and this continued to be the presumption on all money contracts, up to the 1st of May 1865. But "it shall be competent for either of the parties to show, by parol or other relevant testimony, what the understanding was in regard to the kind of currency in which the same are solvable; and in such case, the true understanding shall regulate the value of the contract."

His Honor was correct in ruling out the testimony in regard to the value of the land. The executor had sold the land twelve months before the execution of the bond upon which this action is brought, to one Sherrill, and had repurchased the same from Sherrill. The plaintiffs were only interested in the fund arising from the sale of the land by the executor, who, we take it, was authorized to sell, as no objection is heard to the contrary.

So far then as the parties to this bond are concerned, the land is out of the question.

But the defendant, who, as we have seen, was the assignee of Sherrill, undertook to settle with the heirs for their interest in the fund.

After the lapse of twelve months, during which time there had been no note or other written security, he proposed to discharge the plaintiff's claim in Confederate money. This was objected to by the plaintiff, and finally a compromise was effected, by which the defendant paid one-half the claim in Confederate money, and gave his note for the other half, pay-

able at the end of twelve months in "current money." The defendant states that he finally acceded to this proposition. He says that " he told the plaintiff that he thought that the money would then be better, because, if it did not get better, the war would end," and this is further explained by his answer, in which he says that he " put in the words, current money, expressly for his own protection against *specie demand*. Greenbacks not then being known."

All that occurred between the parties in relation to the compromise was material and relevant, as showing what the understanding was in regard to the kind of currency in which the bond was solvable ; as was also the fact that the defendant, as late as the twelfth day of March 1869, assigned to the plaintiff a note for two hundred and two dollars and twenty-five cents, bearing date first January 1866, and payable " in gold or silver, or its value in currency," and at that time, only claimed to have it entered as a credit upon his bond, and we may add, that the evidence sent to this Court, together with the defendant's answer, it seems to us, explains the transaction very satisfactorily. The presumption, raised by law is rebutted. The compromise by which the defendant paid half the debt in worthless Confederate notes, and protected himself against *a specie demand,* was a sufficient consideration to support the new promise to pay in current money.

We are inclined to think that upon the defendant's own showing the proper conclusion was arrived at ; but, unfortunately for the plaintiff, his Honor withdrew all these questions from the jury, and passed upon them himself.

He should have submitted the evidence in respect to the understanding, and the compromise that was effected between the parties, to the jury, with proper instructions thereon. If a Judge charge the law incorrectly, and yet the jury, by their verdict, find contrary to the charge, and in accordance

with the law, the error of the Judge furnishes no ground for a new trial, but a Judge has no right to withdraw questions of fact from the jury, and if he decide on facts or inferences, which ought to have been left to the jury, although he may find correctly, yet he has invaded the peculiar province of the jury, and this is error.

Let it be certified that there is error, &c.

PER CURIAM.                                        *Venire de novo.*