McKESSON and HUNT v. JONES, MENDENHALL and CARTER.

McKESSON and HUNT vs. JONES, MENDENHALL and CARTER.

1. Where a note was given in 1863, payable two years after date, and *to be paid "in the current funds of the country when due,"* *Held* that the Act of 1866–'67, which raises the presumption that all contracts to pay money, made during the war, were intended to be payable in Confederate money, cannot apply where the writing itself shows a different intent. When the contract is to pay so many *dollars*, evidence may be received to show that the real agreement was to pay in some other money than Confederate currency.

2. When the makers of a note, given for the rent of land, set up as a defence to the action, that the payees in said note had no title to the land, and no right to lease the same, and it was replied, that the guardian of the real owners of the land had, since the lease was given, ratified the same by receiving payment, and had entered a *retraxit* in a suit brought against one of the occupants under the lease; *Held* that such replication was sufficient to defeat the defence relied on.

3. The mere fact that there is a paramount title outstanding, or a claim set up against the tenant by the true owner, will not authorize him to dispute the title of his landlord. He must have been compelled to make some payment to the true owner, to avoid an eviction, and such payment is regarded as a payment to the landlord, and to be deducted from the rent.

4. If a note be given for the lease of a tract of land, and it appears that the purpose of the lease was to raise food for laborers employed to make iron for the Confederate Government; *Held*, that such a note is not illegal and void on that account; the Courts cannot take into consideration such indirect and remote consequences.

5. Where in an action upon such note, one of the plaintiffs is introduced as a witness, and it is proposed to ask him whether he did not know the purpose of the lease; *Held*, that such question is immaterial, as it could make no difference whether the plaintiffs knew, or did not know the purpose of the lease.

*Robeson* v. *Brown*, 63 *N. C.* 554. *Howard* v. *Beatty*, 63 *N. C.* 559. *Hilliard* v. *Moore*, 65 *N. C.*, 540. *McKesson* v. *Mendenhall*, 64 *N. C.*, 502. *Martin* v. *McMillan*, 63 *N. C.* 486. *Phillips* v. *Hpoker*, *Phil. Eq.* 193, cited and approved.

Civil action tried before Mitchell, Judge, at Spring Term 1871 of Burke Superior Court.

The following is a statement of the case made out by the presiding Judge :

" This was a civil action on a bond, made 14th November, 1863, payable two years after date, in the current funds of the country when due." The consideration of said bond, was the lease of a tract of land belonging to the heirs at law of J. S. C. McDowell, dec'd.

Defendants admitted the execution of the bond, but relied on several defences set forth in their answer.

1. That plaintiffs could only recover, if at all, the actual value of the rents and profits of the said land for the term.

2. That plaintiffs could recover, if at all, only the value of the nominal amount of the bond at the time of its execution, and that was the understanding of the parties at the time of its execution.

3. The consideration of the bond was illegal, the land having been leased to the defendants, for the purpose of raising and furnishing supplies for detailed laborers employed by defendants in manufacturing iron for the Confederate Government, under a contract with said Government, which fact was well-known to plaintiffs when the land was leased.

4. Plaintiffs represented at the time of executing the bond, that they had full right to lease, claiming under a lease from Hon. Charles Manly who was guardian of the minor heirs of J. S. C. McDowell.. Whereas, in fact there was no rightful guardian at the time, and Mrs. McDowell has since the expiration of the lease been appointed guardian of said heirs.

5. That Mrs. McDowell, guardian, is entitled to the rents and profits for the term of the demise to the defendants, and has brought suit against defendant Carter, who was the actual occupant, or tenant during said term, and as a defendant sets up this as a counter-claim.

Plaintiffs reply, denying the first and second allegations of answer. To the third they repliy, that the acceptance of rent by the guardian of McDowell's heirs, ratified the loan. To

the fourth, plaintiffs reply, they indemnified the owners of the land, by satisfaction to the guardian, Mrs. McDowell, who entered a formal *retraxit* to the suit commenced against defendant Carter, as occupant and tenant of the land. They deny the consideration as alleged in paragraph 3, and especially that plaintiff had any knowledge of the purpose for which the land was leased. They admit that they purported to lease, by virtue of a lease, under Governor Manly.

Defendants proposed to examine testimony to prove the value of the rents during the lease, for which the bond was given.

The testimony was excluded by the Court as irrevelant. The defendants called Wm. F. McKesson, one of the plaintiffs, and asked him if he knew the purpose for which the lands were leased by the defendants, and if they were to raise supplies for detailed laborers, &c. He answered, No. They further asked him, if they did not tell him so at the time? Witness answered that he did not recollect that they told him so at the time the bond was given.

The defendant then proposed to prove the declarations of of the witness, "That they had told him so."

The question was disallowed and ruled out.

It was in evidence that Mrs. McDowell was not appointed guardian until the year 1866, and after the expiration of the Term. She accepted rents from the plaintiffs once during the term and before her appointment as guardian and a second time after the termination of the lease and after she had been appointed. It was also in evidence that Mrs. McDowell had entered a *retraxit* in her suit against Carter for the rents of the land, and it was admitted that this would discharge him.

The Court instructed the jury that if they were satisfied of the truth of the evidence in the case, the plaintiffs would be entitled to their verdict for the full amount of the note in lawful currency. Defendants excepted :

1. To the ruling out by the Court of the evidence by which defendants proposed to contradict McKesson, called as a witness by themselves.

2. Rejection of evidence offered to prove the value of the rents and profits during the term of the lease, in order to reduce the amount of the recovery.

3. Because the Court rejected the application of the legislative scale for that purpose.

There was a verdict for the whole amount of the note. Judgment accordingly, from which the defendants appealed.

*Folk* and *Busbee & Busbee* for plaintiffs.
*Batchelor* and *Bragg & Strong* for defendants.

Rodman, J.   On the 14th of November, 1863, the defendants who were partners under the name of Jones, Mendenhall & Carter, rented of the plaintiffs certain lands for two years from that day, and to secure the rents made to plaintiffs two promissory notes, the first payable at one, and the second at two years from date. The first was paid on' or after maturity in Confederate money.   The second is now sued on and is in the following words :

$4000.

Two years after date we promise to pay W. F. McKesson and Hunt four thousand dollars for that portion of the McDowell land we have rented, the same to be paid *in the current funds of the country when due.*

This 14th November, 1863.

(Signed,)    JONES, MENDENHALL & CARTER.

The defendants make several defences, and it will be most convenient to state and consider each separately :

1. They say that at the making of the note it was agreed that it should be paid in Confederate money.   Even if such evidence could be admitted, there does not seem to have been any, but that the first note was so paid.   But such payment was consistent with its terms, and has no tendency to show

that this note is to be paid otherwise than according to its terms. The Act of 1866–'67, which presumes that all contracts to pay money made during the war, were intended to be payable in Confederate money, cannot apply where the writing itself shows a different intent. Where the contract was to pay so many dollars, and the presumption consequently applied, several recent cases have held that evidence might be received to show that the real agreement was to pay in some other money than Confederate. *Robeson* v. *Brown*, 63 N. C. 554.

But where the contract on its face declares in what currency it shall be paid, we think in no case has parol evidence been received to show that it was payable in some other. The Act of 1666–'67 does not have the effect of making such evidence competent. In *Howard* v. *Beatty*, 63 *N. C.* 559, the action was upon a note dated 3d of April, 1865, payable twelve months after date in " current money." There was evidence tending to show that it was understood by the parties, that the note was to be paid in specie or some equivalent currency, and not in Confederate money. The Court say, tho Judge should have left it to the jury, to find what was the agreement in that respect, and if they found that specie or some currency that should be valuable was intended, the plaintiff should recover the amount of the note payable in present legal currency. Here the note itself states what in that case the jury was to find.

The case of *Hilliard* v. *Moore*, 65 *N. C.*, 540, is still more nearly in point, and must govern our decision. There the note was given 20th July, 1864, and payable January 1st, 1866, " in current funds at the time the note falls due." It was held that the plaintiff was entitled to recover the sum expressed on the face of the note, payable as other judgments are in legal tender.

2. Defendants further say, that plaintiffs by their demise impliedly undertook that defendants should quietly hold

the demised premises during the term ; but that in fact plaintiffs had no right to let the land ; and that since the expiration of the term, the guardian of the McDowell heirs, who were the true owners, has sued the defendants for their use and occupation during the term, which they may be compelled to pay.

We are not called on to decide whether a recovery in an action of this sort *after the expiration of the term* which the tenant had enjoyed, would be considered an eviction by title paramount, so as to furnish a defense or counter-claim to an action for the rent. We have found no authority on the question, and it was not decided by us in *McKesson* v. *Mendenhall*, 64 N. C. 502. All we did in that case was to permit the McDowell heirs to come in as parties, so that the question could be raised. We are inclined to think that payment of a recovery of the sort mentioned would be a good defense.

The plaintiffs however reply, that although they had at the time of the lease no right to make it, yet the guardian of the infant owners, has since that time ratified the lease by accepting payments from them in satisfaction, and entered a *retraxit* in the suit she had brought against Carter, who was the only one of the defendants whom she had ever sued.

We think this reply sufficient to defeat the defense relied on. The mere fact that there is a paramount title outstanding, or a claim set up against the tenant by the true owner, will not authorize him to dispute the title of his landlord. He must have been compelled to make some payments to the true owner to avoid an eviction, and then he is considered to have made the payments by the consent of the landlord, and they are regarded as payments to the landlord upon the rent, and consequently to be deducted from it. *Smith Land. and Tenant*, 129 and note on page 170 Am. edition citing *Graham* v. *Ailsoff*, 3 Exch. 186, and *Jones* v. *Morris*, Ib. 742.

3. Defendants further say, that the contract sued on was illegal and void; for that they (the defendants,) had contract-

ed with the Confederate government to furnish it with iron for military purposes; and that many of the laborers employed by them, were detailed for their service by the said government; and that the land was rented by the defendants for the purpose of raising food for the laborers so employed; all of which the plaintiffs well knew.

The farthest this Court has ever gone in holding a contract illegal as being in aid of the rebellion, was in *Martin* v. *Mc-Millan*, 63 N. C. 486. There the plaintiff sold to the defendant, who was an agent for the Confederate government to buy mules, certain mules, and took his note for the price. The action was on the note, and the contract was held illegal. In the present case the aid given to the rebellion was much more indirect; it was at best two steps farther off. It was not a sale of military material, nor even a sale of provisions to laborers engaged in making such material, but a lease of land upon which provisions might be raised, which might be applied to feed laborers engaged in an unlawful occupation.

It is well known that during the late war every cultivated field in the South was made to pay its tithe to the support of the Confederate army. Were all leases of fields, therefore, illegal?.

This Court said in *Phillips* v. *Hooker*, Phil. Eq. 193. that the mere fact that a certain act tended indirectly to aid the rebellion, would not, if it were done in the ordinary course of business, vitiate it; and on that principle it sustained contracts of which Confederate money was the consideration.

It is possible to foresee and calculate the direct consequences of an act. If we attempt to follow it out into its indirect and more remote consequences, our reasoning becomes soon uncertain, and after a few steps altogether unsatisfactory. When we confine ourselves to direct consequences, we feel that we are treading on tolerably firm ground; but if we go farther, there is no telling into what calculations of remote and merely possible consequences we may not be compelled

to plunge.    This case affords an instance of how uncertain are all calculations on remote consequences, for if the plaintiffs intended that the crops made on the rented land, should feed laborers engaged in making iron for the Confederate Government, in point of fact they did not so go, for before the crops were raised that Government had ceased to exist.

4. Defendants introduced the plaintiff *McKesson* as a witness, and asked him if he did not know the purpose for which the land was rented, and that such purpose was to raise supplies for their detailed laborers.    He said he did not.    He was then asked if defendants did not tell him so?    He said he did not recollect it.    Defendants then proposed to prove by other witnesses the declaration of McKesson, that defendants had told him so.    This evidence being objected to, was excluded by the Judge, and defendants excepted.    In the view we have taken of this case, the evidence was irrelevant, as it made no difference whether the plaintiffs knew of the purpose for which the land was rented or not.    It was therefore properly excluded.

5. Evidence of the value of the occupation was properly rejected for the reasons heretofore given.

There is no error in the proceedings.

Per Curiam.                                    Judgment affirmed.