The following are the material facts as agreed:
Richard H. Smith, as administrator, with the will annexed of Margaret W. Davis, claims to recover of John T. Lawrence two hundred and seventy-eight dollars and seventy-six cents, *Page 99 
with interest on one hundred and sixty dollars, from March 22d 1874, and the defendant resists the claim.
The controversy depends upon the following grounds: On the first day of January, 1874, one William H. Shields, being the guardian of two infant children named respectively Indiana Shields and Alice Shields, domiciled in Halifax county, at Greenwood, a public hiring place in said county, put up to hire to the highest bidder, at public auction, for the twelve months next ensuing, certain slaves, the property of his said wards, making at the time the said slaves were put upon the block, and before the same were bid off, proclamation to the effect that he should require as security for the hire of said slaves, notes payable to him as guardian of said children twelve months after the day of the hiring, in whatsoever, might then be the currency of the country, at the same time giving distinct notice that Confederate currency would not be received in payment thereof.
One of said slaves was bid off by one Vaughan, as the agent of the testatrix of the plaintiff, after the proclamation and notice aforesaid, at the price of three hundred and twenty-five dollars. After said slave was bid off, and on the same day, Vaughan informed the said guardian that the said testatrix would give her note for the hire.
A few days thereafter the guardian called upon the testatrix at her residence in said county to get her note for the hire, and the testatrix offered to pay the same in Confederate currency, and the said guardian refused to accept the same in payment, stating to her the terms upon which the slave was hired.
The guardian was indebted to the testatrix before the late war, to the amount of two thousand dollars, borrowed money, and executed to her his note, and the same was due and unpaid at the time when he called on her for her note as above stated. After the refusal of the guardian to take Confederate currency in payment for the hire of the slave, the testatrix immediately proposed that the full amount of the hire, to-wit, the sum of three hundred and twenty-five dollars, should be credited on the *Page 100 
note which the said guardian had executed to her. To this the guardian assented, and the arrangement was about to be made, when a mutual friend of the parties came in and advised them that inasmuch as the hire was not due and there was some difference between discount and interest, it would be better for the testatrix to execute her note for the hire, and when it fell due it should go as a credit on the note of the guardian. To this arrangement both parties assented, and such became the understanding and agreement, and in accordance thereto the testatrix executed her note for the hire of said slave.
When the note of the testatrix for the hire of said slave became due, the guardian applied to the testatrix to have the credit made on the note of the guardian for two thousand dollars according to the aforesaid agreement, and the testatrix refused so to do.
Since the close of the war the said W. H. Shields has paid to the testatrix the full amount of the said note, in currency of the United States.
W. H. Shields qualified as guardian of the said children, at February Term, 1857, of the Court of Pleas and Quarter Sessions of Halifax county, and hired out their slaves annually thereafter until their emancipation in 1865.
After the first year of the war the said slaves were hired out each and every year upon the terms hereinbefore set forth.
Margaret W. Davis died, domiciled in the county of Halifax, in the month of May, 1873, leaving a last will and testament in which no executor was named, which will and testament was on the 19th day of May, 1873, duly admitted to probate in the Probate Court of Halifax county, and on the 17th day of June next ensuing, the defendant, John T. Lawrence, was by said Court appointed collector of her estate, and letters of collection were immediately issued to him, and he qualified as such, and took into his possession the personal estate of the decedent.
On the 11th day of February, 1873, the said Indiana Shields intermarried with one J. B. Bishop, who, on the 1st day of *Page 101 
January, 1874, had a settlement on account of the guardianship of his wife, with the said guardian, W. H. Shields. In this settlement the said note for $325 was transferred to and accepted by Bishop and his wife at its nominal value as cash, and on the 22d day of March, 1874, the defendant, John T. Lawrence, as collector, paid to Bishop the full amount of the nominal value thereof, and interest, to-wit, $541.60, with which amount he has credited himself in his account as collector.
On the 10th day of December, 1874, the plaintiff, Richard H. Smith, was appointed and qualified as administrator with the will annexed of the said Margaret W. Smith, by the Probate Court of Halifax county.
The said Richard H. Smith has applied to the said John T. Lawrence, the defendant, for a settlement as collector, and Lawrence has exhibited an account wherein he claims credit for the sum of $541.61 paid J. B. Bishop, as aforesaid. The plaintiff refuses to allow the same, insisting that the defendant is only entitled to credit for the actual amount of the hire of the slaves on the first day of January, 1874, with interest thereon to the 22d day of March, 1874, making $262.85.
On the first day of January, 1864, the hire of said slaves for the twelve months next ensuing was one hundred and sixty dollars.
None of the admissions herein contained are in anywise to affect either party, or to be regarded as made, except for the purposes of the submission of this controversy.
The question submitted to the Court upon the case is as follows:
Is the defendant, John T. Lawrence, entitled to credit for $541.61 on the 22d day of March, 1875?
If this question is answered in the affirmative, then judgment is to be rendered against the defendant for cost; if in the negative, judgment is to be rendered against the defendant for the sum of $278.76 with interest on $165 from the 22d day of March, 1874, the difference between the nominal value of said note and the hire of the slaves. *Page 102 
The Court gave judgment for the plaintiff, and thereupon the defendant appealed.
Under the statute of frauds parol evidence cannot be introduced to contradict, explain or vary a written contract.
To this rule there is an exception arising under the ordinance of 1865 and the act of 1866, chap, 38.
The ordinance enacts that all executory contracts, solvable in money, made between certain dates, shall be deemed to have been made with the understanding that they were solvable in money of the value of Confederate currency, according to a scale which the legislature was required to furnish subject to evidence of a different intent of the parties to the contract. The first section of the act of 1866, chap. 38, is loose and ungrammatical, but it must be understood to enact that as to contracts of the sort above mentioned proof might be admitted of the consideration, and the jury should determine its value in the present currency.
The acts allow parol evidence to vary written contracts:
1. When the consideration of the promise to pay money was a sale of property, (or hire,) to show the value of property (or hire,) c.
2. When the consideration was either a sale (or hire) of property, a loan of money, to show that payment was agreed to be made not in Confederate money, as was presumed, but in some other money or article.Ferrell v. Walker, 66 N.C. 244.
"The general rule does not apply in cases where the original contract was verbal and entries and a part only of it was reduced to writing." Greenleaf Ev. 5, 284. Perry v. Hill, 68 N.C. 417; Robbins v. Love, 3 Hawks, 82; Nichols v. Bell, 1 Jones, 32; Tendy v. Sanderson, 9 Ire. 5,Manning v. Jones, Bus. 368; Daughtry v. Boothe, 4 Jones, 87. *Page 103 
Where proclamation was made at a hiring by executors in January, 1865, that such money would be received as would pay the debts of the estate, reference being made specially to a bank debt, held: That although no allusion to this was contained in the bonds given for such hires, it was competent for the obligors to show the proclamation and also the market value of the notes of the bank. Woodfin v. Sluder, Phil. 200.
Action on bond made 14th November, 1863, payable two years after date in current funds of the country when due. The consideration was the lease of land.
They say that at the making of the note it was agreed that it should be paid in Confederate currency.
The act of 1866-'67, which presumes that all contracts to pay money during the war were intended to be paid in Confederate money, cannot apply where the writing shows a different intent. But where the contract on its face shows in what currency it must be paid, parol evidence not admissible to show it was payable in some other. McKesson v. Jones, 66 N.C. 258.
In all other kinds of contracts the value of the property or otherconsideration may be shown in evidence, and the jury must estimate the value in United States Treasury notes. Robeson v. Brown, 63 N.C. 54.
Note dated 28th July, 1864, payable for negro hire, January 1, 1866, in current funds at the time the note falls due.
In our case it is evident that the parties knew that Confederate money was rapidly depreciating, and they were willing to take the chances of a future and different condition of things; and they expressly agreed that the note was to be paid in funds which were current when the note became due. Defendant not relieved by the statutes of 1866. Hilliard v. Moore,65 N.C. 540; see also Chapman v. Wacasen, 64 N.C. 532.
Note one day after date for $1,000, dated November 10th, 1862. Given for land. Expressly agreed between parties that it was to be paid in good money after war. Agreement not inserted in bond. *Page 104 
The fair and reasonable construction of the collateral contract was to make the words "good money after the war" refer to the kind of money in which the note was to be solvable, and not to the time at which the note was to be payable. This construction does not vary the written contract, but explains it, c. Held that the plaintiff recover fair value of note.Sowers v. Earnhart, 64 N.C. 96.
In 1864, Smith purchased hats from Garrett agreeing to pay 30 pounds lint cotton per hat. Plaintiff held entitled to recover gold or its equivalent value of cotton. Garrett v. Smith, 64 N.C. 94.
Administrator sells effects of intestate at public sale, making proclamation of terms that Confederate notes would not be taken. Sued on bond dated 18th January, 1865. Judgment for face value of note.
Before the sale was made it was announced by the auctioneer that Confederate money would not be received in payment from the purchasers. This evidence fully rebutted the presumption created by the ordinance of October 18th, 1865, and acts of 1866, chaps. 38 and 39. Judgment affirmed.Cherry v. Savage, 64 N.C. 103.
Note 23d of November, 1864, given C. M. E. for land at 12 months. Condition of sale that it was to be paid in undepreciated currency. Held that it was payable in "greenbacks and not in gold." Blackburn v. Brook,65 N.C. 413.
In our case there was an express contract to pay in the currency of the country at the time of payment. Confederate money was expressly ignored. It cannot be that this should be scaled according to value of hire, because the express agreement was to pay the hire in the full amount in currency. There being at the time of payment no currency except U.S. currency, it was right to pay in that the full amount of principal and interest.
A note is executed on the 1st day of January, 1864, wherein *Page 105 
the promiser agrees to pay $325 twelve months after date in whatsoever might be the currency of the country when the said note should becollected. The promise notified the promiser before executing the note, that Confederate money would, under no circumstances, be taken.
The note fell due on the 1st day of January, 1865, and on that day Confederate money was the currency of the country; but for the stipulation that Confederate money would not be taken, the note would be subject to scale. Davis v. Glenn, et al., 72 N.C. 520.
Except Confederate money there was no currency when the note fell due. If any force be given to the stipulation concerning the Confederate money, the value of the consideration of the note, to wit, the hire of the slave for one year, must, of a necessity, be inquired into. His Honor so held, and he is not in error. King v. W. W. R. R. Co., 69 N.C. and cases cited.
The guardian, Shields, on 1st January, 1864, hired his ward's slave to the plaintiff's testator for the year 1864, under a proclamation, that the hire must be secured by note, payable twelve months after date, in whatever might be the currency of the country when the note should be collected, but that Confederate currency would not be received.
As the note was to be payable in currency when due, (for so we understand it) and was not to be payable in Confederate currency, (and there was no other) it is difficult to tell in what it was payable when it fell due on 1st January, 1865. So that, if the decision of the case depended upon that, we would probably solve the doubt by requiring the payment of the value of the services of the slave. But we put the decision upon another ground.
When the guardian, a few days after the hiring, applied to plaintiff's testatrix to comply with the terms of the hiring by giving bond, she declined to give the bond, and offered to pay down Confederate money; which the guardian declined to receive. *Page 106 
She then proposed to have no bond about it; but to settle the matter then, by entering the amount as a payment upon a bond which she held against the guardian; which was not subject to any scale. To this the guardian consented, and the bargain was struck. And they were about to endorse the amount on the bond as a credit, when a friend suggested that as the hire was not due for twelve months, if it were entered on the bond then, she would lose the interest; and to prevent that, it was agreed that she should execute her bond for the amount of the hire, and when it fell due, it was to be credited on the bond. It was upon this compromise and agreement that the bond was executed; and it was a valid contract. When the bond fell due, she refused to credit the amount upon her bond against the guardian, and collected the whole amount of her bond out of the guardian. We are of the opinion that she thereupon became liable for the whole amount of her bond to the guardian; and upon the guardian's delivering over the bond to his ward, she became liable to the ward; and therefore, the defendant was justified in paying it off. We say that the defendant was justified in paying it off; because it was admitted by plaintiff's counsel on the argument that no point was intended to be made as to the right of the defendant to pay whatever sum the plaintiff's testatrix was liable for. Else we would have to enquire whether the defendant, as collector, had the right to pay the debts of the estate.
There will be judgment here for the defendant according to the case agreed, for his costs.
PER CURIAM. Judgment accordingly. *Page 107