STEPHEN JOHNSON, Adm'r. v. P. A. MILLER and others.

### *Contract -- Confederate Currency.*

Where a note was given February 4th, 1865, payable twelve months after date, "in the common currency of the country, that which will pay tax;" *Held,* that the Legislative scale did not apply and that the note was solvable in United States currency.

(*Terrell* v. *Walker,* 66 N. C. 244; *McKesson* v. *Jones, Ibid* 258; *Cherry* v. *Savage,* 64 N. C. 103; *McCombs* v. *Griffith,* 67 N. C. 83; *Williams* v. *Monroe, Ibid.* 133; *Howard* v. *Beatty,* 64 N. C. 559, cited, distinguished and approved.)

CIVIL ACTION, tried at Spring Term, 1876, of YADKIN Superior Court, before *Cloud, J.*

This action was commenced in a Justice's Court and was founded upon an instrument of writing of which the following is a copy:

"Twelve months after date, we, or either of us promise to pay Samuel Johnson the sum of one hundred and ninety-nine dollars and fifty-two cents, in the common currency of the country, that which will pay tax, for value received of him.

Witness our hands and seals.

R. M. Allison. [Seal.]

P. A. Miller. [Seal.]

Witness: H. G. Hampton.

February 4th, 1865."

It was agreed that this note was given for a quantity of bacon bought at a public sale made by Samuel Johnson, the intestate of plaintiff, and that it was publicly announced at said sale that Confederate money would not be taken, but that parties purchasing might pay in North Carolina Treasury notes if payment was made on day of sale, or might give notes payable twelve months after date in the "common currency of the country—that which would pay taxes."

The plaintiff claimed the full amount of the note in United States currency, but the defendant insisted that the value of the property bought, was the true value of the note.

His Honor being of opinion with the plaintiff, gave judgment accordingly, and the defendant appealed.

Mr. J. F. Graves, for plaintiff.

Mr. J. M. McCorkle, for defendants.

RODMAN, J. When during the recent war a note was given for payment of a certain number of dollars, generally without specifying what sort of dollars, it contained a latent ambiguity from the fact of there being several sorts of dollars either actually in use at the time and place of contract or possibly in the contemplation of the parties.

Hence on the principles of the common law, parol evidence was held admissible to explain, by the circumstances attending the contract, what sort of dollars the parties had in contemplation. *Thorington* v. *Smith*, 8 Wall. 1.

The Act of 1866 made a presumption that the parties intended dollars in Confederate currency, but allowed this

presumption to be rebutted by proof of a different intent.... *Terrell* v. *Walker*, 66 N. C. 244; *McKesson* v. *Jones*, 66 N. C. 258; and *Cherry* v. *Savage*, 64 N. C. 103.

It has however never been held, where the written contract by its terms specified in what sort of dollars it should be payable, that parol evidence was competent to prove that it was payable in some other sort of dollars than that specified on its face. Cases cited above. *McCombs* v. *Griffith*, 67 N. C. 83; *Williams* v. *Monroe*, 67 N. C. 133.

In such a case there is no ambiguity, and to allow such evidence would not be to explain an ambiguity, but to contradict a contract in writing by parol, which is inadmissible.

In the present case there is no ambiguity in the words on the 4th of February, 1865. The makers promise twelve months after date, to pay one hundred and ninety-nine dollars and fifty-two cents, *"in the common currency of the country, that which will pay tax."* These words express with reasonable certainty, that the dollars in which payment is to be made, shall be those which are the common currency of the country and which will be receivable in payment of taxes, *at the time when* the payment of the dollar is to be made.

This contract was what the Court of Appeals of Virginia has aptly termed, a contract of hazard; that is to say, that each party took the risk of what the common currency, &c. might be at the maturity of the note.

If the war had continued and Confederate currency had continued to be common currency and receivable for taxes, (as it probably would have been if the Confederate Government had maintained its occupation of the country,) no matter how much more worthless for other purposes it might have become, it would have been a good tender under the contract and the makers of the note might have profited by the depreciation.

. Probably, as the event has occurred, the makers of the note will have to pay for the bacon more than they anticipated when they purchased it, and perhaps more than they would have given had they foreseen what the course of events would be. That was a risk which they took, and they must abide it. *Howard* v. *Beatty,* 64 N. C. 559, is cited as in opposition to this view. In that case the note was dated 3 April, 1865, payable twelve months after date, "in current money." The Judge of the Superior Court held as a matter of law, that upon the facts, "current money" meant "money current" at the maturity of the note. This Court held that these words left it uncertain whether the money meant was such as was current at the making of the note or such as should be current at its maturity, and held that parol evidence was competent to show the intention of the parties. In the present case, the language is more definite and points to a future time which can be no other than the maturity of the note.

There is no error.

. PER CURIAM.                                Judgment affirmed.